IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | |
|---|---|
| NEW JERSEY CHINESE COMMUNITY CENTER, INC.,<br>Plaintiff,<br><br>v.<br><br>PETER MCALEER,<br>STATE OF NEW JERSEY,<br>IPD GROUP INC. dba EIN PRESSWIRE<br><br>Defendants. | Civil Action No. 3:21-cv-8320<br><br><br>**DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

## I. PRELIMINARY STATEMENT

Defendant IPD Group, Inc. dba EIN Presswire (hereinafter "IPD"), through its attorneys, Holland & Knight LLP, submits its Reply in further support of IPD's motion to dismiss Plaintiff's Complaint for Injunctive and Declaratory Relief ("Complaint") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff does not say anything in Opposition which should allow the case against IPD to survive dismissal.

## II. ARGUMENT

**A. In Opposition, Plaintiff Does Not Contest, and Hence Concedes, That The First Amendment Does Not Impose On IPD Any Obligation To Publish Plaintiff's Views**

As set forth in the Motion, and not contested in any way by Plaintiff in Opposition, the First Amendment does not provide Plaintiff with any right to demand that IPD publish Plaintiff's views. Even if IPD choose to publish Plaintiff's views, in its sole discretion, IPD has the right to stop at any time, for any reason without being sued. *See, e.g., Cent. Hardware Co. v. NLRB*, 407 U.S.

1

539, 547 (1972) ("The First and Fourteenth Amendments are limitations on state action, not on [private] action"); *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003)("AOL is a private, for profit company and is not subject to constitutional free speech guarantees"); *Cyber Promotions v. Am. Online*, 948 F. Supp. 436 (E.D. Pa. 1996)(finding advertiser had no First Amendment right to use publisher to distribute its messages). As a publisher, IPD has the unfettered discretion under the First Amendment in deciding what content to publish, and to choose the criteria to apply to that content. *See*, *Green*, *supra*, 318 F.3d at 472 (upholding online publisher's right to impose and enforce Community Standards for content submitted). Plaintiff cannot sue IPD for denial of a "right" which as a matter of law Plaintiff never had.

**B. Plaintiff's Suggestion That Section 1983 Compels IPD To Keep Publishing Plaintiff's Views Would Render The Statute Unconstitutional**

Again, Plaintiff does not contest that the First Amendment never gave Plaintiff a right to publication by IPD. IPD had the absolute right to publish or not to publish. Yet the Opposition suggests that once the State of New Jersey allegedly demanded that IPD stop publishing Plaintiff's views, IPD suddenly had an obligation under federal law to keep publishing those views, forever. On Plaintiff's theory, a publisher loses all of its First Amendment rights to choose whether to stop publishing once such a demand is made. This is absurd.

If Congress by enacting Section 1983 compelled IPD to publish Plaintiff's views, that would be unconstitutional. The statute cannot be so read. The United States Supreme Court has recognized that the First Amendment protects against compelled speech: "There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say." *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 796-97 (1988). Indeed, "Forcing free and

2

independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason…a law commanding involuntary affirmation of objected-to beliefs would require even more immediate and urgent grounds" than a law demanding silence." *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2464 (2018)(quotation marks and citations omitted)(applying a strict scrutiny standard for compelled speech). Such a law is even more abhorrent to First Amendment protections when it requires subsidization of compelled speech. *Id*. Yet, Plaintiff would read Section 1983 as requiring IPD to use its business to continue to publish Plaintiff's views, against IPD's will. The Court should decline this reading of Section 1983.

As the Court of Appeals for the Third Circuit has noted, "We assume that Congress does not intend to pass unconstitutional laws—accordingly, it is a cardinal principle of statutory interpretation that when an Act of Congress raises a serious doubt as to its constitutionality, courts will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 223 (3d Cir. 2018)(quotation marks and citations omitted). Section 1983 is capable of such a reading. In fact, the only plausible reading of Section 1983 in the First Amendment context is that it applies against government officials but not against individual publications. Indeed, Plaintiff has not identified a single case in which a publication was held liable under Section 1983 on any theory, in any court, in any context.

**C. Plaintiff's Additional Arguments To The Contrary Are Unavailing**

As a matter of law, Plaintiff had no First Amendment right to demand that IPD publish Plaintiff's story. Section 1983 cannot be read to compel such a publication, as that reading would put the statute in direct conflict with IPD's First Amendment right against compelled speech. These facts require immediate dismissal of IPD from the action.

A second, independently-sufficient basis for dismissal of all claims exists.  IPD did not act "under color of law" as required for Section 1983 liability.  On the facts as alleged, IPD is not a state publication.  Plaintiff does not allege that IPD willingly coordinates its editorial decisions with the State of New Jersey, or depends on the State of New Jersey to determine what newswires it will or will not publish, or on what schedule.

Plaintiff does not allege sufficient faces to make it plausible that IPD "conspired" with the State not to publish Plaintiff's views.  *Compare*, *Dennis v. Sparks*, 449 U.S. 24, 28 n.4, 101 S. Ct. 183, 186 (1980)(holding that "*willful* participant in joint activity with the State or its agents" may qualify as acting under color of law)(emphasis added).  *Dennis* involved an alleged conspiracy by the plaintiff's competitors to obtain an illegal injunction through a state court, to strip the plaintiff of property rights.  In this case, Plaintiff never had a right to publish via IPD; IPD did not need any state support to stop printing Plaintiff's views at any time; and IPD did not act under color of law.

Plaintiff also cites to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 933, 102 S. Ct. 2744, 2751 (1982).  In *Lugar*, the private party (secured creditor) used state court procedures to obtain possession of collateral (a truck).  The plaintiff claimed that these state court proceedings violated due process.  Since the private party had allegedly conspired with the state and used state procedure to obtain its supposedly illicit ends, the Court allowed the secured creditor to be sued under Section 1983.  Even on the facts alleged, IPD did conspire with anyone.  If IPD wanted to stop publishing Plaintiff's views, it could do that at any time without any help from the state.  Plaintiff does not present facts making plausible his claim of joint action.

Lastly, Plaintiff cites to *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598 (1970).  In *Adickes*, the defendant store refused to serve the plaintiff, a white teacher in the company of

black students.  The plaintiff became upset, and a police officer at the counter arrested her on the spot for "vagrancy".  *Id*, pp. 153-157.  She sued under Section 1983 for denial of her rights under the Fifth (due process) and Fourteenth Amendments (equal protection under the law).  The plaintiff sued both the store and the police.  The Court remanded for further determination as to whether the store was acting under color of law, *i.e.*, whether it was a "willful participant in joint activity with the State or its agents".  *Id*. at 152.

*Adickes* does not help Plaintiff's action survive this Motion to Dismiss.  The Third Circuit has since narrowly applied the case.  *See, e.g., Carver v. Plyer*, 115 F. App'x 532 (3d Cir. 2004).  *Carver* concerned involuntary hospitalization of an individual who had attempted suicide.  The plaintiff contended he was denied his Constitutional rights by being detained without a trial.  He sued the police and the hospital.  The Third Circuit found that the hospital was not a state actor subject to suit under Section 1983.  Surveying the law nationwide, the Third Circuit noted that the private party (the hospitals) acted pursuant to their own medical discretion in committing individuals, even when the original detention is made by the police.  Likewise, IPD has its own editorial discretion whether to publish Plaintiff's views or not, under the First Amendment.[1]  There is no exercise of this First Amendment discretion which would transform IPD into a state actor acting under color of law.

---

[1] If this case were to survive this Motion to Dismiss, IPD would present evidence that Plaintiff agreed to IPD's User Agreement, https://www.einpresswire.com/user-agreement , which in relevant part (7. Content Submission) provides that "**We reserve the right to edit or reject the content or other information when necessary at our sole discretion**."  If IPD is required to prove and enforce these terms, IPD "shall be entitled to recover all legal expenses incurred in connection with the action, including but not limited to its costs, both taxable and non-taxable, and reasonable attorney's fees."  User Agreement, 12. About These Terms.  Given the procedural posture, this Motion does not rely on the User Agreement, which Plaintiff never mentions in the Complaint.

IV.  **CONCLUSION**

On the facts as alleged, Plaintiff simply has no claim under 42 U.S.C.S. § 1983 against IPD. IPD should be dismissed from this action immediately. On Plaintiff's view of Section 1983, this federal law compels publications to publish and republish (indefinitely) any content to which the government objects. Plaintiff's reading of Section 1983, a federal civil rights statute, would strip IPD of its First Amendment rights. This reading, which would be of grave concern to every publisher nationwide, is simply not tenable. Whatever Plaintiff's claims against any state official, IPD must be dismissed.

Dated:  October 25, 2021.

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:     /s/ Paul Bond
Paul Bond, (Bar No. 042012002)
Holland & Knight LLP
Cira Centre, Suite 800
2929 Arch Street
Philadelphia, PA  19104
Telephone: (215) 252-9600
Facsimile: (215) 867-6070
Email: paul.bond@hklaw.com

*Attorney for* IPD Group, Inc. dba EIN Presswire