IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

NEW JERSEY CHINESE COMMUNITY
CENTER.
Plaintiff,

CIVIL ACTION NO. 3:21-cv-08320-FLW-LHG

v.

PETER MCALEER ,
STATE OF NEW JERSEY,
IPD GROUP, INC. d/b/a EIN PRESSWIRE
Defendants

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENT AND PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS COMPLAINT**

_____

LAW OFFICE OF CYNTHIA M. HWANG, ESQ., LLC
Cynthia M. Hwang, Esq. Bar ID: 039082010
615 Roosevelt Avenue
Piscataway, New Jersey 08854
Attorneys for Plaintiff
NEW JERSEY CHINESE COMMUNITY CENTER, INC.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1. On 4/6/2021, Plaintiff filed the within complaint against the defendants, alleging that defendants unlawfully suppressed a press release submitted by plaintiff and published by defendant EIN Presswire to cover up instances of misconduct and bias in the judicial system, violating the plaintiff's constitutional right to freedom of speech and press under the US and NJ Constitution, and New Jersey Civil Rights Act.

2. As set forth in the complaint, on or about February 15, 2021, the plaintiff submitted a press release to the defendant EIN Presswire for distribution and publication. The title of the press release was "IN SOMERSET SUPERIOR COURT, JUDGE REED JUST COULDN'T STAND UP TO JUDGE MILLER'S PRESSURE IN DECIDING A CASE."

3. On or about February 20, 2021, the press release was approved by EIN Presswire for distribution.

4. On or about March 10, 2021, the plaintiff found that the press release had been retracted without its knowledge or consent.

5. According to EIN Presswire, it retracted the press release because Peter McAleer who is the Director of Communications and Community Relations, New Jersey Administrative Office of the Courts had filed a complaint and ordered that it be retracted.

6. Despite repeated emails, the defendant Peter McAleer has failed to provide any reason or cite any authority that empowered him to suppress the plaintiff's press release.

7. This press release was part of a fundraising campaign to raise awareness and speak out against discrimination and bias against Asian Americans, including racial injustice faced by Asian Americans in the legal justice system.

8. The defendant's arbitrary action has undermined the plaintiff's credibility and severely damaged the plaintiff's fundraising ability.

9. Defendant unconstitutional action to cover up instance of misconduct and bias in the judicial system has violated the Plaintiff's constitutional rights to freedom of speech under the First, Fifth Amendments to the United States Constitution pursuant to 42 U.S.C. Sec. 1983-1986; the New Jersey State Constitution, and the New Jersey Civil Rights Act.

10. The declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Sec. 1983 and Rule 57 of the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY AND REQUEST FOR DEFAULT

11. On 8/16/2021, plaintiff served the summons and complaint upon the State of New Jersey and Peter McAleer according to service of process instructions provided to the process server at defendant's address at 25 West Market Street, Trenton, NJ. Service was accepted and acknowledged on 8/18/2021. A copy of the e-filed Affidavit of Service is hereto attached as Exhibit A.

12. Neither the State of New Jersey nor Peter McAleer has appeared or answered the complaint, and on 11/9/2021, plaintiff requested and obtained entry of default against the State of New Jersey and Peter McAleer for failure to answer or otherwise defend. On March 10, 2022, the plaintiff filed a motion for default judgment.

## **LEGAL ARGUMENT**

Defendant's Motion to Vacate Default Judgment and Cross-Motion to Dismiss Complaint should not be considered as it was filed out of time. Pursuant to Fed. R. Civ. P. 7.1(d)(2), ("[t]he brief and papers in opposition to a motion … must be filed with the Clerk at least 14 days prior to the original motion day.)"

Despite receiving a one-cycle adjournment of the motion return date from April 4, 2022 to April 18, 2022, Defendant's motion filed on April 5, 2022, is late. Defendant has not provided any reason or justification for its delay nor did the Court order otherwise. Accordingly, the Defendant's motion and cross-motion should not be heard.

**I.     Response to Point I: Defendants have not shown good cause for vacating default judgment. Defendants admit that the defendant State of New Jersey had been properly served yet failed without justification to file an answer or otherwise defend or respond to plaintiff's complaint**

Defendant's motion to vacate default should be denied on the grounds that (1) defendants State of New Jersey and Peter McAleer were properly served; (2) defendant State of New Jersey admits that it had been properly served and has failed to provide good cause for its failure appear in this case, file an answer, or otherwise respond to plaintiff's complaint; (3) defendants have not shown good cause for vacating default nor asserted meritorious defenses. Plaintiff further requests that in the event the Court vacates default, the defendant State of New Jersey should be ordered to reimburse the plaintiff for costs incurred up to this juncture including attorneys' fees and costs for obtaining entry of default and filing the within motion for default judgment.

As set forth in plaintiff's affidavit of service, on August 5, 2021, plaintiff hired J&K Investigative Services, Inc., a process serving company, to serve the summons and

complaint upon Peter McAleer and the State of New Jersey at 25 Market Street, Trenton, New Jersey.[1]

Upon arrival at 25 Market Street in Trenton, the process server was provided written instructions by the security officer regarding the new electronic procedure for service of process upon the defendants.

On August 16, 2021, plaintiff served the summons and complaint upon Peter McAleer and the State of New Jersey via the NJAC Electronic Service system according to the instructions that had been provided by the process server. Service was acknowledged on August 18, 2021. **A copy of plaintiff's affidavit of service and exhibits is hereto attached as Exhibit A.**

### a) <u>Defendant's motion to vacate default judgment should be denied as defendants were properly served</u>

First, Defendants acknowledged and accepted service, and never claimed after receiving the summons and complaint that plaintiff's service was improper. After following defendants' process service instructions and serving its summons and complaint via the NJAC Electronic Service system, plaintiff simply received an email reply from defendants stating that the matter had been received acknowledging the service. **Exhibit A.**

While defendants now claim that due to an "administrative failure, Plaintiff's electronic service email "was not forwarded to [Peter McAleer]" (Def. Brief, Pg. 16), it is not the plaintiff's job to make sure the served papers are forwarded to the correct parties nor does plaintiff have any control over what happens to the summons and complaint after they are uploaded onto the NJAC Electronic System. Plaintiff's job was

---

[1] Defendant IPD Group, Inc. d/b/a EIN Presswire was served at 1025 Connecticut Avenue, NW, Suite 1000, Washington, DC 20036.

only to serve the summons and complaint according to the service instructions provided by defendants.

As defendants were properly served the summons and complaint, defendants have not shown good cause to vacate default and defendants' motion should be denied.

## b) **Defendant State of New Jersey admits it was properly served, yet failed to appear in the action, answer the complaint or otherwise defend against the complaint**

While it remains plaintiff's position that both Peter McAleer and State of New Jersey were properly served in accordance with the Court Rules, defendants do not dispute that with respect to the State of New Jersey, it was properly served both in accordance with the instructions provided to plaintiff's process server and in accordance with the NJ Supreme Court's April 7, 2020 Order. See Def. Brief, Pg. 7 ("the NJ Supreme Court's April 7, 2020 Order relaxes the provisions of NJ Ct. R. 4:4-4(a)(7) to permit service via email *on the State of New Jersey*").

Despite being properly served, however, defendant State of New Jersey has entirely failed to appear in the case until now, has not filed an answer to the complaint or otherwise defend in the case, and has provided no reasonable justification for its failure to do so. The defendant should not simply be allowed to come into the case whenever it feels like it and ask for vacating default.

If the Court decides to vacate default, before granting defendant's motion, the Court should in all fairness at least consider the reimbursement of legal cost the plaintiff has incurred up to this point including obtaining entry of default and filing the within motion for default judgment. The plaintiff has already spent more than $1,700 on these motion filings which were caused solely by the State's failure to appear in or otherwise defend the lawsuit. In Endress v. Brookdale Community College, 364 A.2d 1080 (1976), the United States Supreme Court recognized "the equitable power of federal courts to award attorneys' fees when the interests of justice so requires."

In this instance, defendants do not dispute that with respect to defendant State of New Jersey, it was properly served both in accordance with the instructions provided to plaintiff's process server and in accordance with the NJ Supreme Court's April 7, 2020 Order, and has not provided a reasonable justification for its failure to appear or otherwise defend the case until now. Wherefore, if the Court vacates default and allows the Defendant a clean slate to start over, Plaintiff requests an Order ordering defendant State of New Jersey to reimburse Plaintiff in the amount of $1,700.00 for reasonable attorneys' fees and costs incurred by plaintiff including requesting entry of default and filing the within motion for default judgment.

Defendant's motion to vacate default should further be denied as Defendants have not demonstrated meritorious defenses to plaintiff's complaint as set forth below.

## II. **Response to Point II: The Eleventh Amendment Does Not Immunize States From Suits Brought by Citizens of its Own State**

Contrary to defendants' claim that the "State Defendants are entitled to Eleventh Amendment Sovereign Immunity from suit and are not "persons" amenable to suit under 42 U.S.C. Section 1983" (Def. Brief, Pg. 19), the State Defendants are not entitled to immunity under the Eleventh Amendment. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

While the Eleventh Amendment protects states in suits brought by "citizens of another state, or by citizens or subject of any foreign state," nowhere in its language does it protect states from suits brought by citizens of its own State. In this instance, Plaintiff is a New Jersey entity bringing suit against the State of New Jersey.

## III. **Response to Point III: Peter McAleer is not entitled to Eleventh Amendment sovereign immunity and may be found liable under Section 1983**

Even if the State is immune to suit under the Eleventh Amendment, Defendant Peter McAleer is not entitled to Eleventh Amendment sovereign immunity and is considered a "person" for purposes of Section 1983 and subject to liability.

In Hafer v. Melo, 502 US 21 (1991), the United States Supreme Court made clear that "officers sued in their personal capacity come to court as individuals," holding that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." Id.

In this case, Peter McAleer may be sued in his individual capacity under Section 1983.

While Defendant McAleer then raises a defense of "qualified immunity" (Def. Brief, Pg. 22), this defense must fail as the plaintiff had clearly established rights afforded under the US Constitution that any reasonable official including McAleer should have been aware at the time of the violation. Plumhoff v. Rickard, 134 S. Ct. 2012, 2014 (2014). See also, Ashcroft v. al-Kidd, 563 U.S. 731 (2011).

### a) Freedom of Speech

Plaintiff has a constitutional right of free speech and press under the First Amendment of the US Constitution. As set forth in plaintiff's complaint,

1. On or about February 15, 2021, the plaintiff submitted a press release entitled "IN SOMERSET SUPERIOR COURT, JUDGE REED JUST COULDN'T STAND UP TO JUDGE MILLER'S PRESSURE IN DECIDING A CASE" to the defendant EIN Presswire for distribution and publication.

2. On or about February 20, 2021, the press release was approved by EIN Presswire for distribution.

3. On or about March 10, 2021, the plaintiff found that the press release had been retracted without its knowledge or consent.

4. According to EIN Presswire, it retracted the press release because Peter McAleer who is the Director of Communications and Community Relations, New Jersey Administrative Office of the Courts had filed a complaint and ordered that it be retracted in an attempt to cover up instances of misconduct and bias in the judicial system.

5. Despite repeated inquiries, Defendant Peter McAleer has failed to provide any reason or cited any authority that empowered him to suppress the plaintiff's press release.

A government official is entitled to "qualified immunity" only if his or her actions "could reasonably have been thought consistent with the rights they are alleged to have violated." See <u>Ashcroft</u>, supra. In this instance, however, defendant McAleer could not have reasonably believed that ordering EIN Presswire to retract plaintiff's press release to be consistent with plaintiff's constitutional right to freedom of speech and press. Plaintiff has a "clearly established" constitutional right to free speech and to publish its press release without interference or suppression by the defendant. No reasonable official in McAleer's position would have believed that ordering EIN Presswire to take down plaintiff's press release without affording plaintiff any due process of law to be consistent with plaintiff's right to free speech and press.

### IV.     **<u>Response to Point IV: Plaintiff States a Claim for Conspiracy</u>**

Contrary to defendant's argument that plaintiff fails to "state a cognizable claim for conspiracy" (Def. Brief, Pg. 27), Defendants' motion to dismiss the complaint should be denied as the plaintiff establishes a claim for conspiracy. To establish a claim for conspiracy, a plaintiff must show (1) a conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy (4) whereby a person is injured in his person or property or deprived of any

right or privilege of a citizen of the United States. Owens v. Armstrong, 171 F. Supp. 3d 316, 328-29 (D.N.J. 2016). The elements of a conspiracy are an "agreement and concerted action." Capogrosso v. The Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009).

In this instance, the defendants Peter McAleer and EIN Presswire acted in agreement and in concert to cause plaintiff's press release to be retracted. Peter McAleer could not have retracted the press release without EIN Presswire's further actions to literally remove the press release from its system. McAleer and EIN Presswire had to have reached some agreement or understanding in order to have the press release removed. Defendants' concerted actions deprived the plaintiff of its rights to free speech and press under the First Amendment of the Constitution. Defendants' retraction of plaintiff's press release was an overt act in furtherance of their agreement to suppress the press release, and defendants' actions caused injury and damages to the plaintiff.

Contrary to defendants' claim that plaintiff failed to allege "some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action" (Def. Brief, Pg. 28), as set forth in the complaint, the plaintiff's press release was part of a fundraising campaign to raise awareness and speak out against discrimination and bias against Asian Americans, including racial injustice faced by Asian Americans in the legal system. Defendant's actions were racially discriminatory against the Asian American community and served to deprive the plaintiff use of the press release to raise awareness for and combat Asian American hate, bias, and discrimination.

In addition to establishing a Section 1985 conspiracy, plaintiff's complaint also satisfies the elements of Section 1986 (contrary to defendants' argument at Def. Brief, Pg. 28). Under Section 1986, the defendants must have actual knowledge of a 1985 conspiracy (2) the defendant has the power to prevent or aid in preventing the commission of a 1985 violation (3) the defendant neglects or refuses to prevent a 1985 conspiracy and (4) a wrongful act is committed. Clark v. Clabaugh, 20 F.3d 1290, 1292 (3d Cir. 1994).

In this instance, Peter McAleer had actual knowledge of his agreement with EIN Presswire to retract plaintiff's press release, had the power to prevent a violation of plaintiff's constitutional right, and nevertheless committed the violation.

## V. Response to Point V: Defendant McAleer is a Proper Defendant Under the New Jersey Civil Rights Act (NJCRA)

The standard and definition for person under the New Jersey Civil Rights Act (NJCRA) is analogous to that in Section 1983. Under the NJCRA, "a person acting under color of law" is a proper defendant under the NJCRA. As with 42 USC Section 1983, Peter McAleer, in his individual capacity, is a person under the NJCRA and is subject to liability.

## VI. Response to Point VI: Plaintiff States a Claim for Injunctive and Declaratory Relief

This Court has jurisdiction to award injunctive and declaratory relief under 28 U.S.C. Sections 2201-2202.

In Hafer v. Melo, 502 US 21 (1991), the US Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'" (quoting Kentucky v. Graham, 473 U.S.159, at 167, n. 14 (1985)). Defendants do not dispute that a claim for injunctive relief may be "brought against a public official in their official capacity if it seeks prospective injunctive relief [in] order to end continuing violations of federal law." (Def. Brief, Pg. 33-34).

In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court held that citizens may sue state officials if the complaint alleges an ongoing violation of federal law and seeks prospective injunctive relief. In this instance, the continued suppression and retraction of plaintiff's press release constitutes a continuing and ongoing violation of plaintiff's constitutional rights and Plaintiff's request for an order compelling defendants to restore and re-publish the plaintiff's press release constitutes prospective injunctive

relief as it is asking defendant to perform a future act ie. restoring and re-publishing the plaintiff's press release, not to redress a past wrong. *See also*, Defendants' footnote on Page 35 of Defendants' brief wherein Defendants admit that plaintiff's request that the court compel defendants "to restore and re-publish the press release" constitutes a request for prospective relief.

Even if plaintiff's request for relief in seeking the restoration and re-publication of the press release is not considered prospective injunctive relief, plaintiff may nevertheless seek such relief as relief for specific performance.

For the same reasons, Plaintiff also states a claim for declaratory relief. In order to be entitled to declaratory relief, Plaintiff must demonstrate a continuing harm. <u>Brown v. Fauver</u>, 819 F.2d 395, 399-400 (3d Cir. 1987). In this instance, the continued suppression and retraction of plaintiff's press release constitutes a "continuing harm" and continuing violation of plaintiff's constitutional rights. Thus, the plaintiff is entitled to declaratory relief under 28 U.S.C. Sections 2201-2202.

## **CONCLUSION**

For the foregoing reasons, defendants' cross-motion to dismiss complaint should be denied and plaintiff's motion for default judgment should be granted.

Respectfully Submitted,

_____
Cynthia M. Hwang, Esq.
Attorneys for Plaintiff
New Jersey Chinese Community Center, Inc.