***NOT FOR PUBLICATON***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY CHINESE COMMUNITY CENTER,<br><br>Plaintiff,<br><br>v.<br><br>PETER MCALEER, STATE OF NEW JERSEY, IPD GROUP INC. dba EIN PRESSWIRE,<br><br>Defendants. | Civil Action No. 21-08320 (FLW)<br><br>OPINION |

**WOLFSON, Chief Judge:**

This action, brought by plaintiff not-for-profit organization, New Jersey Chinese Community Center, Inc. ("Plaintiff" or "NJCCC"), arises out of a retracted press release. Plaintiff's complaint alleges that defendant IPD Group, Inc. dba EIN Presswire ("Defendant" or "EIN Presswire") violated NJCCC's constitutional right to freedom of speech by retracting a press release it had agreed to publish after an employee at the New Jersey Administrative Office of the Courts filed a complaint and ordered that it be retracted. In that regard, Plaintiff asserts that Defendant violated NJCCC's free speech rights under the First and Fifth Amendments pursuant to 42 U.S.C. §§ 1983 through 1986, the New Jersey State Constitution, and the New Jersey Civil Rights Act ("NJCRA").[1] In the present matter, Defendant moves to dismiss the Complaint. For

---

[1] Plaintiff also brought the same claims against the State of New Jersey and Mr. Peter McAleer, Director of Communications and Community Relations at the New Jersey Administrative Office of the Courts. There is a pending motion for default judgment that was recently filed against the State of New Jersey and Mr. McAleer. The State defendants opposed the

1

the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss all claims in the Complaint. To the extent Plaintiff believes it can cure the deficiencies in its claims discussed below, Plaintiff is given leave to amend the complaint within 30 days of the accompanying Order.

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this motion, the Court takes the complaint's allegations as true. The sum total of Plaintiff's allegations are as follows. On February 15, 2021, Plaintiff submitted a press release to EIN Presswire for publication titled "In Somerset Superior Court, Judge Reed Just Couldn't Stand Up to Judge Miller's Pressure in Deciding a Case." (Compl. ¶ 5.) The press release was allegedly part of a fundraising campaign to raise awareness of discrimination and bias against the Asian American community. (*Id*. ¶ 9.) On February 20, 2021, Defendant allegedly approved the press release for distribution. (*Id*. ¶ 5.) Less than a month later, on March 10, 2021, Plaintiff avers that it discovered that the press release had been retracted without its knowledge or consent. (*Id*. ¶ 6.) Plaintiff alleges that EIN Presswire retracted the press release because defendant, Mr. Peter McAleer, the Director of Communications and Community Relations at the New Jersey Administrative Office of the Courts had "filed a complaint and ordered that it be retracted." (*Id*. ¶ 7.) The complaint does not go any further as to explain the content of the complaint or the capacity in which Mr. McAleer "ordered" EIN Presswire. Indeed, as Director of Communications and Community Relations, it does not appear that Mr. McAleer has the capacity to enter an order that would compel a private entity such as EIN Presswire to refrain from issuing any press releases. Nevertheless, as a result of the alleged retraction of the press release, Plaintiff maintains that its credibility and fundraising ability have been severely damaged. (*Id*. ¶ 10.) On April 6, 2021,

---

motion for default judgment and cross-moved to dismiss Plaintiff's complaint. The Court does not address that motion in this Opinion.

Plaintiff filed the instant complaint seeking damages and injunctive relief against Defendant for alleged violations of its rights to freedom of speech under §§ 1983-1986 of the Civil Rights Act, the New Jersey Constitution, and the NJCRA.  Now, Defendant moves to dismiss the complaint. (ECF No. 12.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

### III. DISCUSSION

#### A. Section 1983 Claim

To assert a § 1983 claim, a plaintiff must allege deprivation of a federal constitutional or statutory right by a person acting under the color of state law. *See Klein v. Donatucci*, 861 F. App'x 503, 507 (3d Cir. 2021) (citing *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)). Private party actors are not liable under §1983. Rather, "those who deprive persons of federal constitutional or statutory rights 'under the color of any statute, ordinance, regulation, custom or usage' of a state" are subject to § 1983 liability. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). Thus, to state a claim of liability under § 1983, a plaintiff must allege that she was "deprived of a federal constitutional or a statutory right by a <u>state</u> actor." *Id*. (emphasis added). The parties do not dispute that EIN Presswire is a private entity. Therefore, in this case, the threshold question is whether Defendant's alleged retraction of the press release has a sufficient nexus with the state such that it can be considered state action. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

The Supreme Court has identified several instances where a private party's actions may be considered state action. A challenged activity may constitute state action when it results from the State's exercise of "coercive power" or when the State provides "significant encouragement, either overt or covert." *Id*. at 296 (citations and internal quotation marks omitted). In addition, the Supreme Court has treated private entities as state actors when a private actor operates as a willful participant in joint activity with the State or its agents; when it is controlled by an agency of the state; when it has been delegated a public function by the State; when it is entwined with

4

governmental policies; or when the government is entwined with its management or control. *See id.*

Plaintiff argues that EIN Presswire's decision to retract the press release amounts to state action under two theories: compulsion and joint action. (ECF No. 13, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Pl. Br. in Opp'n."), pp. 3-4.) As alleged, however, neither theory survives a motion to dismiss.

First, the allegations in Plaintiff's complaint do not describe willful participation in joint activity with the State. *See U.S. v. Price*, 383 U.S. 787, 794 (1966) ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute."). When alleging state action by a private actor through joint activity, a plaintiff must demonstrate that "(1) the private entity has a 'prearranged plan' with the [state actors], and (2) under the plan, the [state actors] will 'substitute their [own] judgment' with that of the private entity's." *Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013) (quoting *Cruz v. Donnelly*, 727 F.2d 79, 81–82 (3d Cir. 1984)). Further, the plaintiff must show that the state and the private actor shared "common purpose or intent." *Harvey v. Plains Twp. Police Dep't.*, 421 F.3d 185, 195 (3d Cir. 2005) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 942 (1982)). In other words, there must be a meeting of the minds. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (citation and internal quotations omitted).

Here, there is no allegation of a "prearranged plan" between Mr. McAleer and Defendant to retract Plaintiff's press release. Rather, Plaintiff alleges that EIN Presswire refused to distribute the press release after McAleer "filed a complaint and ordered that it be retracted." (*See* Compl. ¶¶ 6-7.) Moreover, there are no allegations in the complaint that Defendant substituted its

5

judgment for that of Mr. McAleer or his office. Thus, absent any indication of a prearranged plan or substitution of judgment, the Court cannot find joint activity. *See Cahill*, 512 Fed. App'x. at 231.

Next, I also find no "coercion" or "significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (finding no state action even though the state provided a significant portion of a private corporation's funding, because the state was not responsible for the decisions of the organization). "Mere approval of or acquiescence in the initiatives of a private entity" is insufficient to infer coercion. *Blum*, 457 U.S. at 1004; *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978). Courts have held that coercion may arise where the state has threatened, for example, the private entity with "loss of grant money, loss of revenue-producing referrals, and denial of certain permits." *Downey v. Coal. Against Rape & Abuse, Inc.*, 143 F. Supp. 2d 423, 439 (D.N.J. 2001), *aff'd*, 142 F. App'x 645 (3d Cir. 2005); *see also Merritt v. Mackey*, 827 F.2d 1368, 1370–71 (9th Cir. 1987) (finding coercion where federal officials issued drug treatment agency ultimatum of firing employee or facing complete loss of state and federal funds).

In the instant case, the complaint is devoid of facts that suggest coercion of any kind. Indeed, Plaintiff does not allege that McAleer threatened EIN Presswire with any repercussions. Moreover, the sole allegation that Mr. McAleer filed "a complaint and ordered" the press release to be retracted is insufficient to demonstrate significant encouragement. Indeed, a private party's decision does not constitute state action, even if state agents "encouraged," *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 565 (6th Cir. 2007), or "incentiv[ized]" the choice. *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 784 (6th Cir. 2007) (finding government's offering of tax incentives for a manufacturing company to open a new plant did not constitute significant encouragement). The encouragement must be of the kind such that the State is

effectively responsible for the choice. Stated differently, encouragement is significant when the private entity's choice is "deemed to be that of the State." *Blum*, 457 U.S. at 1004. Here, although Plaintiff avers that Mr. McAleer "filed a complaint and ordered" EIN Presswire to retract the press release, Plaintiff supplies no additional facts regarding the circumstances of such complaint or order. The inquiry into whether a private entity is acting as a state actor is fact specific. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *see also Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 608 (3d Cir. 2011) ("Action under color of state law must be addressed after considering the totality of the circumstances and cannot be limited to a single factual question.") Without facts surrounding the contents of the complaint or order, the Court cannot determine whether the State's action constituted coercion as to render Defendant's choice effectively that of the State's. Thus, Plaintiff has not adequately alleged state action on the part of private entity, EIN Presswire. Accordingly, Plaintiff's § 1983 claim is dismissed without prejudice.

### B. First Amendment

Assuming *arguendo* that there is state action, the Court must also determine whether there is deprivation of a federal constitutional or statutory right. Section 1983 "does not . . . create substantive rights." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979)). Rather it is a remedial statute designed to redress deprivations of rights secured by the Constitution and federal laws. Plaintiff argues that Defendant violated its speech rights under the First and Fifth Amendments[2] of the Constitution.

---

[2] Plaintiff asserts that NJCCC's rights to freedom of speech were also violated under the Fifth Amendment. (Compl., ¶ 11.) The Fifth Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand

7

The First Amendment states in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I. It is well-established that the right to publish is firmly embedded in the First Amendment's guarantee of free speech and a free press. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("As a general matter, 'state action to punish the publication of truthful information seldom can satisfy constitutional standards.'" (quoting *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 102 (1979)); *New York Times Co. v. Sullivan*, 376 U.S. 254, 299 (1964) (Goldberg, J., concurring) ("The theory of our constitution is that every citizen may speak his mind and every newspaper express its view on matters of public concern and may not be barred from speaking or publishing because those in control of government think that what is said or written is unwise, unfair, false, or malicious.") The constitutional guarantee of free speech, however, is "a guarantee only against abridgement by government, federal or state." *Hudgens v. N. L. R. B.*, 424 U.S. 507, 513 (1976).

Here, Defendant argues that similar to private newspapers, online press distributors have the editorial discretion to choose what content to publish and not to publish. (*See* ECF No. 12, Defendant's Motion to Dismiss ("Def. Mot. to Dismiss"), pp. 2-3.) Specifically, Defendant relies on the Third Circuit's decision in *Green v. Am. Online (AOL)* for the proposition that for profit

---

jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. Here, the Fifth Amendment is not implicated by Plaintiff's allegations in the complaint and Plaintiff has not alleged deprivation of any other right apart from freedom of speech. Accordingly, the Court does not construe Plaintiff to have asserted a Fifth Amendment claim.

companies are not subject to constitutional free speech guarantees. 318 F.3d 465, 472 (3d Cir. 2003) (finding that plaintiff's free speech claims against AOL, a private, for-profit company were meritless). Defendant's argument is misplaced, however. Assuming Plaintiff demonstrates state action on the part of EIN Presswire, the decision to retract a press-release is distinguishable from a private publisher's right to select its publications, and it is subject to constitutional free speech guarantees. *See, e.g., Husain v. Springer*, 494 F.3d 108, 124 (2d Cir. 2007) (holding that in the context of public universities "when a public university establishes a student media outlet and requires no initial restrictions on content, it may not censor, retaliate, or otherwise chill that outlet's speech, or the speech of the student journalists who produce it, on the basis of content or viewpoints expressed through that outlet" without running afoul of the First Amendment).

By alleging that Mr. McAleer, a State actor, ordered the withdrawal of a press release titled "In Somerset Superior Court, Judge Reed Just Couldn't Stand Up to Judge Miller's Pressure in Deciding a Case," Plaintiff has alleged suppression of speech based on content. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law applies to a particular speech because of the topic discussed or the idea or message expressed.") With exceptions for certain categories of speech, such as fighting words, defamation, and obscenity, content-based restrictions of non-commercial speech are "presumptively invalid." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992); *see also United States v. Alvarez*, 567 U.S. 709, 717–18 (2012) (listing content-based restrictions on speech that have long been permitted). The government generally may "regulate expressive *content* only if such restriction is necessary, and narrowly drawn, to serve a compelling state interest." *Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995) (citation omitted). For example, the government may prohibit the publication of properly classified information to which current or former

government employees have gained access to by virtue of their employment due to its compelling interest in protecting secrecy of information important to national security. *See Snepp v. United States*, 444 U.S. 507, 510 n. 3 (1980); *Brown v. Glines*, 444 U.S. 348, 354 (1980). However, the government may not censor material that is unclassified, wrongly classified, or derived from public sources. *See McGehee v. Casey*, 718 F.2d 1137, 1141 (D.C. Cir. 1983) (citing *United States v. Marchetti*, 466 F.2d 1309, 1313 (4th Cir. 1972)). Indeed, the government has no legitimate interest in precluding the publication of unclassified material. *See id.*

Here, from the title of the press release, it is readily apparent that the speech at issue is not properly classified government information, but rather speech critical of a state judge. And it is axiomatic that "[t]he right to criticize public officials is . . . protected by the *First Amendment*." *Jefferson v. Ambroz*, 90 F.3d 1291, 1298 (7th Cir. 1996). Thus, as alleged, I find that by asserting state interference with publication of speech critical of public officials, Plaintiff has asserted the violation of a federal right. Should Plaintiff demonstrate that EIN Presswire acted as a state actor in retracting the press release, Plaintiff has adequately alleged a constitutional violation.

### C. Sections 1985 and 1986

Plaintiff also brings claims under §§ 1985 and 1986 of the Civil Rights Act. Sections 1985 and 1986 apply to civil rights conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 826 (1983) (citation omitted). A plaintiff seeking to raise such a claim must allege (1) a conspiracy, with the purpose of depriving a person or class of persons of equal protection or privileges and immunities under the law, (2) an act in furtherance of that conspiracy, and (3) personal or property injury. *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015). The Supreme Court has recognized two rights as protected by § 1985(3) against private

conspirators—the right to be free from involuntary servitude and the right to interstate travel. *McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001). However, § 1986 requires conspirators to act under the color of state law, as is the case under § 1983. *See Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972 n. 7 (9th Cir. 1994) ("Section 1986 authorizes a remedy against state actors . . . .").

Plaintiff's §§ 1985 and 1986 claims suffer from several issues. First, Plaintiff does not allege Defendant conspired to deprive NJCCC of either the right to be free from involuntary servitude or the right to interstate travel. Moreover, assuming Defendant demonstrates state action on the part of Defendant, with respect to the purpose element, Plaintiff must allege facts showing that the alleged conspiracy was motivated by racial animus. *Scott*, 463 U.S. at 826. Plaintiff's complaint does not identify any garden-variety conspiracy, let alone a racially motivated conspiracy. Rather, Plaintiff merely states that the press release was part of a fundraising campaign to raise awareness of discrimination faced by Asian Americans in the legal justice system. (Compl., ¶ 9.) Nowhere in Plaintiff's complaint, however, does Plaintiff allege discriminatory racial animus on the part of EIN Presswire or Mr. McAleer. Moreover, as the allegations stand now, it can also be inferred from the title of the press release that any alleged interference with its distribution may have been driven by an intent to protect a state judge's reputation as an impartial actor. Additionally, the complaint does not describe an agreement between EIN Presswire and other defendants or any concerted action necessary to plead conspiracy. *See Wierzbicki v. City of Jersey City*, No. 19-17721, 2021 WL 4148105, at *8 (D.N.J. Sept. 10, 2021) ("An allegation of conspiracy is insufficient when the plaintiff 'fails to plead actual agreement and concerted action sufficient to support any . . . form of conspiracy.'" (quoting *Steele v. Pub. Def. Middlesex Cnty.*, No. 19-412, 2021 WL 2850464, at *4 (D.N.J. July 8, 2021). Because Plaintiff has not presented

any factual allegations to support a conspiracy or discriminatory animus on the part of EIN Presswire, NJCCC fails to state § 1985 and 1986 claims against Defendant. Additionally, as currently alleged, the § 1985 claim fails because freedom of speech is not a right protected by § 1985(3) against private conspirators. The § 1986 claim also independently fails for the same reason the § 1983 claim failed: inadequate showing of state action. As such, the § 1985 and 1986 claims are dismissed without prejudice.

### D. New Jersey Civil Rights Act

Plaintiff also asserts claims under the New Jersey State Constitution and the New Jersey Civil Rights Act arising out of the same retracted press release. "The New Jersey Civil Rights Act . . . creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[ ]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44. (D.N.J. 2011). Although Plaintiff alleges a violation of constitutional rights to freedom of speech under the New Jersey State Constitution and the NJCRA separately in the complaint, I construe the New Jersey State Constitution claims as being brought under the Act. Similar to § 1983 of the Civil Rights Act, the NJCRA permits a party who has been deprived of civil rights secured under the New Jersey Constitution by a person acting under color of law to bring a civil action for damages and injunctive relief. NJCRA provides, in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. 10:6-2(c). Courts in this district have consistently interpreted the NJCRA analogously to § 1983. *See Chapman v. New Jersey,* No. 08–4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *see also Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) (noting that New Jersey courts have also "consistently looked to federal § 1983 jurisprudence for guidance") (citation and internal quotation marks omitted). Because Plaintiff has failed to plead state action as required by § 1983, and Plaintiff's NJCRA claim is viewed through the § 1983 lens, I dismiss Plaintiff's claim under the NJCRA without prejudice for the same reasons stated above.

## IV.   CONCLUSION

For the foregoing reasons, Defendant EIN Presswire's motion to dismiss is **GRANTED**. Plaintiff's claims against this defendant are dismissed without prejudice. To the extent that Plaintiff believes it can supply additional facts to cure the deficiencies in the section 1983, 1985, and 1986 claims discussed above, Plaintiff is given leave to amend the complaint within 30 days of the accompanying Order.

**DATED**: May 17, 2022

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge