**UNITED STATES DISTRICT COURT**

DISTRICT OF NEW JERSEY

(609) 989-2182

| | |
|---|---|
| CHAMBERS OF<br>FREDA L. WOLFSON<br>CHIEF JUDGE | Clarkson S. Fisher Federal<br>Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 |

**LETTER ORDER**

December 2, 2022

Cynthia Mei Hwang, Esq.
New Jersey Chinese Community Center
Legal Services Department
17 Schoolhouse Road
Somerset, NJ 08873

Ashley Laura Costello, Esq.
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 116
Trenton, NJ 08625

Steven Brikowski, Esq.
New Jersey Office of the Attorney General
W. Market St., Suite 2-111
Trenton, NJ 08625

Paul Jeffrey Bond, Esq.
Holland & Knight LLP
2929 Arch Street, Suite 800
Philadelphia, PA 19104

      **RE:**   *New Jersey Chinese Community Center v. McAleer, et al.*
              **Civ. Action No. 21-08320 (FLW**

Counsel:

      Plaintiff New Jersey Chinese Community Center ("Plaintiff" or "NJCCC") commenced the above-referenced civil rights action against the State of New Jersey, Director of Communication and Community Relations for the Administrative Office of the Courts of New Jersey, Peter McAleer (together "State Defendants"), and IPD Group, Inc. d/b/a EIN Presswire ("EIN Presswire") (collectively "Defendants"). Plaintiff's initial Complaint sought damages and

injunctive relief against all named defendants for alleged violations of its free speech rights under the First and Fifth Amendments pursuant to 42 U.S.C. §§ 1983 through 1986, the New Jersey State Constitution, and the New Jersey Civil Rights Act ("NJCRA") in connection with a retracted press release. (Complaint ("Compl."), ECF No. 1.)  On October 4, 2021, EIN Presswire moved to dismiss Plaintiff's Complaint.  I granted EIN Presswire's motion and directed Plaintiff to file an amended complaint alleging additional facts demonstrating state action on the part of EIN Presswire.  On June 9, 2022, Plaintiff filed an Amended Complaint. (Amended Complaint ("Am. Compl."), ECF No. 27.)

State Defendants failed to respond to the summons and original complaint, and on November 9, 2021, Plaintiff filed a request for entry of default, which the Clerk entered on the same date. (ECF Nos. 16, 17.)  Thereafter, Plaintiff filed a motion for default judgment. (ECF No. 18.)  On April 5, 2022, State Defendants filed a cross-motion to vacate default and dismiss Plaintiff's original Complaint.  On August 15, 2022, I granted State Defendants' motion to vacate default and dismissed all claims as to the State of New Jersey[1] and the §§ 1985 and 1986 claims against Mr. McAleer.  However, because the Amended Complaint set forth additional allegations relevant to the § 1983 and NJCRA claims, I directed Plaintiff and Mr. McAleer to submit supplemental briefing addressing whether such allegations stated a suppression of speech claim against Mr. McAleer.  In lieu of a formal Opinion, the Court renders its decision on state action and suppression of speech in this Letter Order.  EIN Presswire's Motion to Dismiss Plaintiff's Amended Complaint for failure to assert state action is **DENIED**.  Further, the Court finds that Plaintiff's Amended Complaint adequately states suppression of speech claims under § 1983 and NJCRA, and therefore, Mr. McAleer's Motion to Dismiss is also **DENIED**.

There are various tests under which a plaintiff may demonstrate state action on the part of a private entity.  In my previous decision, I found that Plaintiff's sole allegation that Mr. McAleer "filed a complaint and ordered that [the press release] be retracted" did not amount to state action under the theories of nexus/compulsion and joint action.  *See New Jersey Chinese Cmty. Ctr. v. McAleer*, No. 21-08320, 2022 WL 1553334, at *3 (D.N.J. May 17, 2022).

Under the nexus test, a plaintiff must show a sufficiently close nexus between the government and the private entity such that the conduct of the private entity can be fairly attributed to the government.  *See Brentwood Acad. v. Tenn. Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (citations omitted).  In other words, a state officer is responsible for private decisions "only when [he/she] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  For instance, I previously explained that courts have found coercion where the state has threatened the private entity with "loss of grant money, loss or revenue producing referrals, and denial of certain permits." *Downey v. Coal. Against Rape & Abuse, Inc.*, 143 F. Supp. 2d 423, 439 (D.N.J. 2001), *aff'd*, 142 F. App'x 645 (3d Cir. 2005).

Joint action is established if the plaintiff demonstrates that "(1) the private entity has a 'prearranged plan' with the [state actors], and (2) under the plan, the [state actors] will 'substitute

---

[1]   The State of New Jersey was dismissed as a defendant.

2

their [own] judgment with that of the private entity's.'" *Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013) (quoting *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984)).

In my prior decision granting EIN Presswire's Motion to Dismiss for lack of state action, I explained that the joint-action test was inapplicable since Plaintiff had not alleged that EIN Presswire substituted its judgment for that of Mr. McAleer or his office or a pre-arranged plan to retract the press release. Further, I found that the Complaint did not adequately allege coercion or significant encouragement as it was devoid of facts suggesting that Mr. McAleer threatened EIN Presswire with any repercussions or encouraged it so much as to render its choice that of the State's. *See New Jersey Chinese Cmty. Ctr.*, 2022 WL 1553334, at *3.

In Plaintiff's Amended Complaint, Plaintiff avers that "contact from the New Jersey Administrate Courts caused the [sic] EIN Presswire to retract the press release shortly after it was published." (Am. Compl., ¶ 36.) Specifically, Plaintiff alleges that "[a]ccording to Jeremy Fields, the Vice President of EIN Presswire, [Mr. McAleer] has threatened the [sic] EIN Presswire with 'possible litigation' and other bad consequences if the press release were not retracted." (*Id*. ¶ 37.)

Plaintiff now argues that by threatening EIN Presswire with possible litigation, Mr. McAleer "'exercised coercive power'" over EIN Presswire converting otherwise private conduct into state action. (*See* Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ("Pl.'s Opp'n), p. 3.)

The Supreme Court recognized the threat of legal sanctions as a form of coercion in *Bantam Books, Inc., v. Sullivan*, 372 U.S. 58 (1963). There, the Rhode Island Legislature created a commission responsible for reviewing printed materials containing obscene language and recommending the prosecution of violations of the State's general laws. *Id*. at 59. Within this role, the commission provided print distributors lists of objectionable books and magazines and served notices threatening criminal action against vendors who circulated the listed publications. *Id*. at 61-63. The notices declared certain publications "completely objectionable" for sale, distribution, or display for youths, and reminded notice recipients of the commission's duty to recommend to the Attorney General the prosecution of purveyors of obscenity. *Id*. at 62 n.5. The notices stated that the "Chiefs of Police" had received the names of the objectionable publications and warned that the Attorney General would "act" for the commission in the case of "non-compliance." *Id*. After sending the notices, the commission often had local police officers follow-up with the distributors. *Id*. at 63. Plaintiff publishers brought First Amendment claims against the Rhode Island commission. The Supreme Court ruled that the commission's system was unconstitutional and amounted to state sponsored censorship. The Court explained that despite lacking the authority to regulate or suppress content, the commission had done so through "the threat of invoking legal sanctions and other means of coercion, persuasion and intimidation" to suppress "objectionable" publications. *Id*. at 66-67. The Court further found that compliance with the commission's directives was "not voluntary" since "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them." *Id*. at 68.

Twenty years following the Supreme Court's decision in *Bantam Books*, the Third Circuit applied that case to a scenario in which the government had pressured a private third party to terminate a business relationship between the third party and another private entity. In *R.C.*

3

*Maxwell v. Borough of New Hope*, the plaintiff leased commercial billboards from Citibank in the Borough of New Hope, Pennsylvania. 735 F.2d 85, 86 (3d Cir. 1984). The billboards advertised alcoholic products and business located outside of New Hope. *Id*. at 86–87. The Borough's Council disapproved of the billboards' content and size and sent letters to Citibank. *Id*. at 86. The letters advised Citibank that the Borough sought its "personal assistance" in removing the billboards and that it hoped Citibank would do so by professional agreement rather than through more costly "legal procedures." *Id*. at 86 n.2. The letters also indicated that though this was a "courteous request," the town was nearing ordination of a new zoning ordinance which would prohibit such advertising and that a federal agency might also soon require the billboards' removal. *Id*. Citibank agreed to remove the billboards out of concern for its reputation in the community and desire to stay in the "good graces" of the Borough Council. *Id*. at 87. The plaintiff-lessee sued the Borough in federal court, arguing under *Bantum Books* that the Borough had "coerced" Citibank into removing the billboards in violation of the plaintiff's First Amendment rights. *Id*. On summary judgment, the district court ruled against the plaintiff-lessee, and on appeal, the Third Circuit affirmed the district court's order of summary judgment in favor of the Borough. *Id*. Notably, focusing on the communications between the Borough and Citibank, the court explained that contrary to the notices in *Bantam Books*, the Borough's letters were "devoid" of "any enforceable threats," since the Borough could brandish nothing more serious than civil or administrative proceedings under a zoning ordinance not yet drafted. *Id*. at 88–89. In other words, the court did not "believe that New Hope's communications with Citibank [could have been] read to have 'coerced' Citibank." *Id*. at 88. Here, pursuant to the guidance of *R.C. Maxwell* and *Bantam Books*, the Court assesses Plaintiff's allegations that Mr. McAleer coerced EIN Presswire into retracting the press release through the threat of possible litigation. *See VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1164 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 1208 (2022) (relying on *R.C. Maxwell* in its application of the nexus test to private resort's cancellation of a conference hosting far-right group following public statements by mayor denouncing hate speech).

Plaintiff avers that in an email dated March 16, 2021, EIN Presswire informed Plaintiff that Mr. McAleer "threatened EIN Presswire with 'possible litigation' if the press release were not retracted." (Pl.'s Opp'n, p. 1.) EIN Presswire attached the March 16, 2021 email from Jeremy Fields, Vice President of EIN Presswire, to Plaintiff in its briefing, which the Court considers since it is explicitly relied upon in Plaintiff's Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The email states the following:

> I have reviewed this case and the press release was in fact retracted with cause. We received a complaint from:
>   Pete McAleer
>   Director
>   Office of Communications and Community Relations
>   NJ Administrative Office of the Courts
>   (609) 815-2910
> In matters such as these we act with caution and retract. This is standard operating procedure to insure transparency and neutrality in the face of possible litigation.

(March 16, 2021 Email from Jeremy Fields to Jimmy Hwang, Reply Br., Ex. A, ECF No. 31-1.). Mr. McAleer argues that this email refutes Plaintiff's allegation that Mr. McAleer threatened EIN Presswire with "possible litigation." (*See* Reply in Support of Defendant's Motion to Dismiss the Amended Complaint ("Def.'s Reply"), p. 2.) I disagree. Accepting Plaintiff's allegations that Mr. McAleer threatened EIN Presswire with "possible litigation" and "other bad consequences" as true, which this Court must, and viewing such allegations in the light most favorable to Plaintiff on a motion to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 201, 211 (3d Cir. 2009), I find that the email does not negate the possibility that Mr. McAleer threatened EIN Presswire with litigation, and the email also does not reveal the nature of the communication between Mr. McAleer and EIN Presswire. Indeed, taking as true the allegations that Plaintiff (1) intended to publish a press release critical of a state judge; (2) Mr. McAleer threatened EIN Presswire with possible litigation and other bad consequences should EIN Presswire fail to retract the press release; and (3) EIN Presswire retracted the press release with cause, Plaintiff has adequately pleaded "a threat of invoking legal sanctions" that originated from the NJ Administrative Office of the Courts, which should not be "lightly disregard[ed]." *Bantam Books*, 372 U.S. at 67, 69. Importantly, pursuant to *R.C. Maxwell*, to fully assess the nature of the threat of litigation, the Court must examine the communications between the publisher and state official. Indeed, unlike in *R.C. Maxwell* where the Third Circuit, at summary judgment, could determine that the letters contained a "courteous request, and a clear desire to avoid legal proceedings, 725 F.2d at 86 n.2, the Court does not possess the content of Mr. McAleer's complaint to EIN Presswire, which is critical to the First Amendment analysis here. Whether Mr. McAleer merely requested a retraction or seriously threatened EIN Presswire with legal repercussions, the Court must take Plaintiff's allegation as true that Mr. McAleer threatened to take legal action against EIN Presswire should the press release be published. This issue must thus proceed to discovery to develop the factual record.

Next, the Court considers the parties' supplemental briefing on the adequacy of the First Amendment claims brought against Mr. McAleer and any entitlement to qualified immunity. The Court previously found that by alleging that Mr. McAleer had "ordered" the withdrawal of the press release, Plaintiff's initial Complaint had alleged a potential suppression of speech based on content. *See New Jersey Chinese Cmty. Ctr. v. McAleer*, No. 21-08320, 2022 WL 1553334, at *5 (D.N.J. May 17, 2022). However, the Court requested supplemental briefing because the Amended Complaint instead averred that "shortly after the publication of the press release, [EIN Presswire] received a complaint [] by [Mr. McAleer]," and, according to Mr. Fields, Mr. McAleer "threatened EIN Presswire with 'possible litigation' and other bad consequences if the press release were not retracted," resulting in "EIN Presswire hav[ing] no choice" but to retract the press release. (Am. Compl., ¶¶ 35-37.)

The suppression of speech inquiry in the context of indirect suppression similarly hinges on the nature of the interaction between the government and the private entity. The Third Circuit has instructed that "[w]hen a public official is sued for allegedly causing a third party to take some type of adverse action against [a] plaintiff's speech, . . . that defendant's conduct must be of a particularly virulent character." *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001). Indeed, "strongly urging or influencing, but not 'coercing' a third party to take adverse action affecting a plaintiff's speech [does] not violate [a] plaintiff's constitutional rights." *Id*. (citing *R.C. Maxwell*, 735 F.2d at 85). For instance, the Borough of New Hope's actions described above in *R.C.*

5

*Maxwell*, did not amount to the type of serious "coercion" that would trigger a First Amendment violation. 735 F.2d at 89. What is more, in *Hammerhead Enterprises, Inc. v. Brezenoff*, the Second Circuit found that a letter sent by an administrator of the Human Resources Administration of the City of New York to various department stores urging the stores not to carry a controversial board game did not constitute government censorship that runs afoul of the First Amendment. 707 F.2d 33, 39 (2d Cir. 1983). There, the court distinguished the facts before it from those in *Bantam Books*, noting the letter by the HRA administrator referred to no adverse consequences that might be suffered by department stores and the fact that not a single store was influenced by the correspondence. *Id*. However, the Second Circuit acknowledged that "[w]here comments of a government official can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request, a valid [First Amendment] claim can be stated." *Id*.

In this case, the Amended Complaint's allegations that EIN Presswire, "fearing negative ramifications" from disobeying the "Office of the Courts," retracted Plaintiff's press release following threatened "potential litigation" and other "bad consequences," at this stage, adequately state a suppression of speech claim under section 1983 and the NJCRA.[2] (Am. Compl., ¶¶ 36-38.) Although the Court cannot discern the severity of Mr. McAleer's conduct, the March 16, 2021 email by EIN Presswire expressing concern over "possible litigation," coupled with Plaintiff's allegation of a "threat" satisfy the notice pleading standard.[3] Accordingly, Mr. McAleer and EIN Presswire's motions to dismiss Plaintiff's Amended Complaint are **DENIED**.

---

[2] Mr. McAleer is not entitled to qualified immunity at this stage. Mr. McAleer contends that "merely suggesting that a third party might institute proceedings with respect to a publication that, on its face, certainly seems capable of being considered defamatory" is not the type of state-sponsored censorship that has been found unconstitutional in a Supreme Court decision or robust consensus of persuasive authority. (*See* McAleer Supp'l Br., p. 8.) The right at issue, however, is not to be free from adverse actions by third parties influenced by "mere suggestions" of state actors. Rather, the Court finds that Supreme Court and Third Circuit precedent discussed *supra* support a right to be free from adverse actions taken by third parties as a result of threat or coercion by state actors. *See, e.g., Bantam Books*, 372 U.S. at 67; *R.C. Maxwell*, 735 F.2d at 85; *Hammerhead Enterprises, Inc.*, 707 F.2d at 39. Nonetheless, because the Court reserves its judgment as to whether this right was violated pending discovery, Mr. McAleer is free to re-raise his qualified immunity defense on a motion for summary judgment.

[3] If discovery reveals no further correspondence or other evidence supporting Plaintiff's contention that Mr. McAleer coerced EIN Presswire to retract the press release through the threat of potential litigation, Plaintiff is unlikely to succeed at summary judgement. Indeed, if the Court were deciding a motion for summary judgment based on the March 16, 2021 email alone, Plaintiff's claims would not succeed. However, because discovery of the contents of the communication between Mr. McAleer and EIN Presswire could further substantiate Plaintiff's claims, I permit Plaintiff's First Amendment claims to proceed against EIN Presswire and Mr. McAleer at this juncture.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

Case 3:21-cv-08320-FLW-RLS   Document 42   Filed 12/02/22   Page 7 of 7 PageID: 655